IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHNNIE LEE KING and ANDREA Z. GUNTER-KING,<br><br>        Plaintiffs,<br><br>  v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>18-11316 (JBS/JS)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, District Judge:**

In this action, Plaintiffs Johnnie Lee King and Andrea Z. Gunter-King (collectively, "Plaintiffs") allege that Defendants Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, and Wachovia Mortgage FSB (collectively, "Defendants") fraudulently obtained a loan and did not have standing to foreclose on Plaintiffs' mortgage. [Docket Item 1.] Defendants filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [Docket Item 7.] Plaintiffs did not timely file opposition to Defendants' motion to dismiss; instead, Plaintiffs filed yesterday a motion to amend/correct[1] [Docket Item 8] and today

---

[1] The Court notes that, under normal circumstances, a timely-filed motion to amend that cures deficiencies in the Complaint identified in a motion to dismiss may render that dismissal motion moot and allow the case to proceed. Here, however, it appears Plaintiffs' motion to amend/correct was actually an improper attempt to untimely file opposition to Defendants' motion to dismiss, which was due on October 29, 2018 under L.

filed an emergency motion for a temporary restraining order [Docket Item 9], which are also pending before the Court.

Plaintiffs' motion for temporary restraining order seeks to enjoin the Burlington County Sheriff's sale of Plaintiffs' home scheduled for December 14, 2018, thus requiring immediate determination of the threshold issue of whether this federal court has jurisdiction to hear this case. For the reasons discussed below, Defendants' motion to dismiss will be granted and Plaintiffs' motions to amend/correct and for a temporary restraining order will be denied. The Court finds as follows:

1. **Factual and Procedural Background.**[2] On February 25, 2008, Plaintiff Andrea Z. Gunter-King ("Gunter-King") executed

---

Civ. R. 7.1. Moreover, Plaintiffs did not attach either a copy of the amended pleading, complete with a handwritten or electronic signature, or a form of the amended pleading that indicates in what respects it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added, as is required by L. Civ. R. 15.1. Plaintiffs' motion to amend thus appears to be a delay tactic.

[2] The facts alleged are drawn from the Complaint, from public court documents, and from undisputedly authentic documents upon which Plaintiffs explicitly rely in the Complaint. See In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Because the Complaint is predicated upon the mortgage documents, correspondence between Defendants and Plaintiff regarding the mortgage, and the foreclosure actions in state court, documents related to these matters submitted by both Plaintiffs and Defendants will be considered in connection with the pending motions to dismiss. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to

and delivered a Note in favor of Defendant Wachovia Mortgage FSB ("WM-FSB") in the amount of $408,000.00 for a property located at 167 Memorial Lane, Mount Laurel Township, New Jersey (hereinafter, "the Loan"). [Docket Item 7-3 at ¶ 1.] To secure the Note, Plaintiffs collectively executed and delivered a mortgage to WM-FSB on February 25, 2008, which was recorded in the office of the Clerk of Burlington County on March 27, 2008. [Id. at ¶ 2.]

    2.   Plaintiffs defaulted on their loan obligations on or about July 15, 2012. [Id. at ¶ 1-k.] On May 8, 2015, Wells Fargo Bank, N.A. ("Wells Fargo")[3] filed a Complaint for Foreclosure in the New Jersey Superior Court, Chancery Division, Burlington County, Docket No. F-16723-15 (hereinafter, "the Foreclosure Action"). [Docket Item 7-3.]

---

dismiss if the plaintiff's claims are based on the document."); see also Farah v. Lasalle Bank Nat'l Ass'n, 2016 WL 1162644, at *5-6 (D.N.J. Mar. 23, 2016) (stating that "records of the foreclosure action that are intrinsic to the complaint may be considered without converting a facial Rule 12(b)(1) challenge into a factual one, or a Rule 12(b)(6) motion into one for summary judgment") (citing Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)).

[3] Effective November 1, 2009, WM-FSB was acquired by and merged with Wells Fargo Bank, N.A., and as a result of the merger, WM-FSB became Wachovia Mortgage, a legal subsidiary and division of Wells Fargo. See Ciccono v. World Sav. Bank, F.S.B., 2013 WL 2146912, at *1 n.2 (D.N.J. May 15, 2013).

3.   On June 16, 2015, Plaintiff Gunter-King filed a contesting Answer to the Complaint [Docket Item 7-4], which was subsequently amended by Attorney Joshua Thomas, Esq. [Docket Item 7-6.] On July 17, 2015, default was entered against Plaintiff King. [Docket Item 7-5 at 1.] On November 11, 2015, Plaintiffs filed a motion to vacate default, which was denied by Order dated December 7, 2015. [Id. at 2.] On December 21, 2015, Plaintiffs filed another motion to vacate default and to participate in the foreclosure mediation program. [Id.] On January 5, 2016, Wells Fargo filed a motion for summary judgment to strike the Amended Answer of Gunter-King and send the matter back to the Office of Foreclosure to proceed uncontested. [Id.] On February 3, 2016, counsel for Wells Fargo and Plaintiffs entered into a Consent Order, which withdrew the pending motions to vacate and for summary judgment, deemed the Gunter-King Amended Answer as non-contesting, and let the matter proceed to final judgment as an uncontested matter. [Docket Item 7-7.] As part of the Consent Order, Wells Fargo also agreed not to apply for final judgment until June 1, 2016. [Id. at ¶ 4.]

4.   On June 23, 2016, Wells Fargo applied for final judgment, which was entered by the Superior Court on July 19, 2016 (hereinafter, "the Final Foreclosure Judgment"). [Docket Item 7-5 at 3.]

5. On February 27, 2017, Plaintiffs filed an emergency motion to stay the sheriff's sale, which was denied by the Superior Court that day. [Id.] On February 28, 2017, Plaintiff Gunter-King filed a motion for reconsideration, which was again denied by Order dated March 1, 2018. [Id. at 4.] On June 1, 2017, Plaintiff Gunter-King filed a "Praecipe to Settle Under Equity Jurisdiction," wherein she claimed that Plaintiffs had paid off the Loan. [Docket Item 7-8.] On September 13, 2017, Plaintiff King filed a motion to stay the sheriff's sale, which was denied by Order dated September 14, 2017. [Docket Item 7-5 at 5.]

6. On January 21, 2018, Joshua Thomas, Esq. filed a motion in the Foreclosure Action to vacate final judgment and default judgment arguing, inter alia, that the Loan was unconscionable, predatory, illegal, and violated the Equal Protection Clause; that Plaintiffs' Pick-A-Payment Loan violated federal lending regulations; that Wells Fargo was in violation of an October 5, 2010 New Jersey Assurance entered into with the New Jersey Attorney General; that Wells Fargo was not the "real party in interest"; and that there were "irregularities" in the Foreclosure Action. [Docket Item 7-9.]

7. After hearing oral argument, the Honorable Kathi F. Fiamingo, J.T.C. (t/a) denied Plaintiffs' motion by Order dated June 8, 2018. [Docket Item 7-10 at 1.] In the Statement of

Reasons, Judge Fiamingo held that the claims and defenses Plaintiffs sought to litigate were voluntarily dismissed by Plaintiffs when their counsel, Mr. Thomas, signed the Consent Order on February 3, 2016, and that Plaintiffs had provided no reason to otherwise justify vacating the Consent Order or Final Foreclosure Judgment. [Id. at 2-9.]

8. Thereafter, on July 2, 2018, Plaintiffs filed a twenty-count Complaint in federal court, arising from the circumstances surrounding the mortgage and foreclosure. [Docket Item 1.] On October 2, 2018, Defendants filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [Docket Item 7.] Plaintiffs did not timely file opposition to Defendants' motion to dismiss, which was due on October 29, 2018; instead, Plaintiffs filed a motion to amend/correct on December 11, 2018 [Docket Item 8], and "emergency motion for a temporary restraining order to stay the December 14, 2018 eviction" on December 12, 2018. [Docket Item 9.] The motions will be decided without oral argument pursuant to Fed. R. Civ. P. 78.

9. **Standard of Review**. Defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). An attack on subject matter jurisdiction can be either facial — based solely on the allegations in the complaint — or factual — looking beyond the allegations to

6

attack jurisdiction in fact. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Where the challenge to subject matter jurisdiction is facial, the court must take all the allegations in the complaint to be true and construe them in the light most favorable to the Plaintiffs. Id. However, when the Rule 12(b)(1) motion is a factual attack, such as here, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. Further, a Court may "review evidence outside the pleadings" in determining whether subject matter jurisdiction exists when a factual attack to a pleading is made. See U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007) (citations omitted).

10. Under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (internal citations omitted).

11. **Discussion**. Defendants argue that Plaintiffs' claims should be dismissed for several reasons: (1) the Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine;

7

(2) the claims are barred by New Jersey's entire controversy doctrine; (3) Plaintiffs' claims are also barred by res judicata and collateral estoppel because their claims regarding the validity of the Note and mortgage, Wells Fargo's right to foreclosure, and the propriety of default were all actually litigated in the Foreclosure Action; and (4) that Plaintiffs have failed to allege any claims against Defendants that entitle them to relief. [See generally Docket Item 7-1.] For the reasons explained herein, the Court finds that the Rooker-Feldman doctrine or, in the alternative, the New Jersey entire controversy doctrine bar this federal action. Since Plaintiffs' claims cannot proceed on these bases, the Court declines to address Defendants' other arguments for dismissal.

12. Rooker-Feldman Doctrine. Defendants first argue that the Rooker-Feldman doctrine precludes this Court's exercise of subject matter jurisdiction over Plaintiffs' present claims. [Docket Item 7-1 at 28-31.] The Court agrees.

13. "[U]nder what has come to be known as the Rooker-Feldman doctrine, federal courts, other than the United States Supreme Court, are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006). The doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." Id. at 466. For the Rooker-

Feldman bar to apply, four requirements must be met: (1) the federal plaintiff must have lost in state court; (2) the plaintiff complains of injuries caused by state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. Great W. Mining, 615 F.3d 159, 166 (3d Cir. 2010) (quotation omitted). In short, pursuant to Rooker-Feldman, a plaintiff may not seek relief in federal court if such relief "would prevent a state court from enforcing its orders." In re Knapper, 407 F.3d 573, 581 (3d Cir. 2005).

14. Here, the Complaint generally alleges that Defendants fraudulently obtained the Loan and that Wells Fargo did not have standing to foreclose the mortgage. [See generally Docket Item 1.] Among other requests for relief, Plaintiffs ask this Court to void "the security instrument in dispute," "the obligation in dispute," and "the Sheriff Deed." [Id. at 62-63.] In other words, the "injury" Plaintiffs allege is the impending loss of their home, which could not have occurred but for the Final Foreclosure Judgment issued by the Superior Court.

15. All four elements of the Rooker-Feldman doctrine are plainly present here: (1) Plaintiffs lost in state court and a Final Foreclosure Judgment was entered by the Superior Court on July 19, 2016, and affirmed by the Superior Court on June 8, 2018; (2) all of the injuries alleged by Plaintiffs, including

the foreclosure and impending loss of their property, directly resulted from the Final Foreclosure Judgment itself; (3) the Final Foreclosure Judgment was entered prior to the filing of this suit; and (4) Plaintiffs are clearly inviting this Court to collaterally review (and reject) the Superior Court's decisions in the Foreclosure Action and set aside the Final Foreclosure Judgment.

16. In sum, Plaintiffs ask this Court to overturn or negate a final judgment issued by the Superior Court, Chancery Division, Burlington County. This is plainly barred by the Rooker-Feldman doctrine. See Otto v. Wells Fargo Bank, N.A., 693 F. App'x 161, 163 (2017) ("To the extent that [the plaintiff's] complaint can be read to include a request for the District Court to overturn or negate the state court judgment of foreclosure, we agree that the Rooker-Feldman doctrine bars the suit.") (citing In re Madera, 586 F.3d 228, 232 (3d Cir. 2009); In re Knapper, 407 F.3d at 581).

17. Entire Controversy Doctrine. In the alternative, the Court finds that, even if the Rooker-Feldman doctrine did not bar Plaintiffs' claims, the New Jersey entire controversy doctrine applies to this federal action.

18. The entire controversy doctrine, codified in Rule 4:30A of the New Jersey Court Rules, "embodies the principle that the adjudication of a legal controversy should occur in one

10

litigation in only one court." Cogdell v. Hosp. Ctr. at Orange, 560 A.2d 1169, 1172 (N.J. 1989). The doctrine requires litigants to assert all affirmative claims relating to the controversy between them in one action, and to join all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts. See Paramount Aviation Corp. v. Agusta, 178 F.3d 132 (3d Cir. 1999) (New Jersey's entire controversy doctrine "requires adversaries to join all possible claims stemming from an event or series of events in one suit."). The doctrine applies in federal courts where there was a previous state-court action involving the same transaction. See Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 887 (3d Cir. 1997).

19. The application of the entire controversy doctrine turns on three criteria: "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." Watkins v. Resorts Int'l Hotel and Casino, Inc., 591 A.2d 592, 599 (N.J. 1991)). "It is [a] commonality of facts, rather than the commonality of issues, parties or remedies that defines the scope of the controversy and implicates the joinder requirements of the entire controversy

doctrine." DiTrolio v. Antiles, 662 A.2d 494, 504 (N.J. 1995). Importantly, the doctrine "bars not only claims that were brought in the previous action, but also claims that could have been brought." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). The New Jersey entire controversy doctrine is intended to preclude a party from "withhold[ing] part of a controversy for separate litigation even when the withheld component is a separate and independently cognizable cause of action." Maertin v. Armstrong World Indus. Inc., 241 F. Supp. 2d 434, 456 (D.N.J. 2002) (quoting Paramount Aviation, 178 F.3d at 137).

20. With respect to foreclosure actions, specifically, the entire controversy doctrine requires that all "germane" claims must be joined in the first action or they are forever barred. N.J. Ct. R. 4:64-5. "The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action." In re Mullarkey, 536 F.3d at 229. In other words, any claim challenging the foreclosure-plaintiff's "right to foreclose" is "germane" to a foreclosure action and must be raised there. Sun NLF Ltd. v. Sasso, 713 A.2d 538, 540 (N.J. App. Div. 1988). Thus, New Jersey Rule 4:65-5 and the entire controversy doctrine encompass all statutory, common law, and constitutional claims relating to a foreclosure action and the

underlying mortgage or tax transaction that led to the foreclosure. <u>Bembry v. Twp. of Mullica</u>, 2017 WL 3033126, at *3 (D.N.J. July 17, 2017).

21. The entire controversy doctrine bars Plaintiffs' claims against Defendants because the same set of facts form the basis of their claims both in this Court and in the underlying Foreclosure Action, and because the crux of their claims in both cases assert impropriety with respect to the Foreclosure Action. In other words, even if some of Plaintiffs' claims in this action are styled as federal causes of action – such as the Federal Debt Collection Practices Act (Count Three) or Fair Credit Reporting Act (Count Four) - Plaintiffs cannot escape the fact that their claims in both courts share the same essence: that Defendants fraudulently obtained the Loan and that Wells Fargo does not have standing to foreclose the mortgage. Each of the current claims was available and could have been raised by Plaintiffs when litigating the Foreclosure Action in Superior Court. Thus, Plaintiffs' claims are barred by the New Jersey entire controversy doctrine.

22. <u>Other Possible Bases for Dismissal</u>. Because the Court finds that the <u>Rooker-Feldman</u> doctrine or, alternatively, the entire controversy doctrine applies, the Court declines to reach Defendants' other arguments for dismissal. <u>Cf. Destefano v. Udren Law Offices, P.C.</u>, 2017 WL 2812886, at *5 (D.N.J. June 29,

13

2017) (declining to reach other possible bases for dismissal after finding that plaintiff's claim was time-barred).

23. **Conclusion.** For the foregoing reasons, the Court will grant Defendants' motion to dismiss. Because the Complaint is legally insufficient, and not merely factually insufficient, any amendment would be futile. Accordingly, the Court will deny Plaintiffs' motion to amend/correct [Docket Item 8], and dismissal will be with prejudice. Because the Court lacks jurisdiction over this case for the reasons described above, the Court will also deny Plaintiffs' emergency motion for a restraining order. [Docket Item 9.] An accompanying Order shall be entered.

**December 12, 2018**           **s/ Jerome B. Simandle**
DATE          JEROME B. SIMANDLE
         U.S. District Judge